76 N.J. Super. 50 (1962)
183 A.2d 767
GLADYS FIELDING, ET AL., PLAINTIFFS,
v.
THE BOARD OF EDUCATION OF THE CITY OF PATERSON, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 27, 1962.
*51 Mr. David W. Hanis for plaintiffs.
Mr. Harold Green for defendant, Board of Education of the City of Paterson.
Mr. Theodore D. Rosenberg for defendant, City of Paterson.
*52 COLLESTER, J.S.C.
In this action, the plaintiffs charge in their complaint in the first count that they are property owners who live in the vicinity of or abutting Westside Park in the City of Paterson and are resident taxpayers of the city; that on April 20, 1888, the city acquired by deed, an unrestricted deed, two tracts of land containing what is now known as Westside Park; that on January 5, 1961, the Board of Education of the City of Paterson adopted a resolution addressed to the City of Paterson by its governing body, the Board of Finance of the City of Paterson, requesting that it convey to the Board of Education nine acres of land in Westside Park to be used as a site for a new high school.
On January 12, 1961 the Board of Finance adopted a resolution which stated in substance, first, that the Board of Education determined that a location in Westside Park for the proposed construction of a new high school was desirable, and, second, that the property at such location was no longer desirable, necessary or required for a park or other public purposes, and the resolution authorized the Mayor and the City Clerk of the city to convey the property to the Board of Education for the nominal sum of $1.00. On January 18, 1961 the City of Paterson delivered a deed for the property to the Board of Education.
The facts presented in the affidavits also indicate that on June 3, 1960 the Board of Education engaged Lee and Hewitt as architects to prepare plans and specifications for a new high school at a total estimated cost of $5,000,000. The affidavits show that the architects prepared preliminary plans and filed the same with the Department of Education of New Jersey; that the plans were tentatively approved on February 7, 1962, and fully approved on March 12, 1962; and it is undisputed that on May 24, 1962 the city adopted an ordinance appropriating $5,300,000 for school purposes and authorizing issuance of school bonds, the ordinance to take effect ten days after May 25, 1962.
*53 The plaintiffs claim in their complaint that the actions of the defendants are an unlawful, ultra vires and unconstitutional diversion of park lands, the right to the use and maintenance as such being vested in the plaintiffs and other citizens of the city.
Plaintiffs claim that each plaintiff has a vested property right in said land and will suffer special damage by the proposed destruction of the park land through this conveyance in that, first of all, it would be an impairment of their property values; second, it would be the taking of private property without due process of law; and, third, that the plaintiffs and other citizens of the city will be deprived of their vested rights to use said park land.
The plaintiffs claim that if the defendants are permitted to proceed, it will be inequitable and impossible to stop the construction of the school and that they will suffer irreparable damage. And so the plaintiffs in their complaint seek a judgment that the defendants be restrained from locating and constructing a school on said land; that the defendants be restrained from completing and implementing the ordinance appropriating $5,300,000 for the construction of the school; that the defendants be enjoined from incurring further expense; and that this court declare the deed from the city to the Board of Education null, void, ultra vires, unconstitutional, and that said deed be set aside.
In the second count of the complaint, the plaintiff alleges that the city adopted a master reference plan which called for substantial increase in park land; that on May 11, 1960 the Board of Park Commissioners adopted a motion which stated in part,
"After due consideration of the pros and cons relative to the proposed establishment of a school site in Westside Park, it is urged that the present park lands be retained in their entirety."
It is also alleged in the complaint that on June 3, 1961 the New Jersey Legislature adopted what is known as the New Jersey Green Acres Land Acquisition Act of 1961, *54 which was approved by referendum, and thus it is the public policy of New Jersey to preserve and expand lands for recreation.
The complaint further alleges that the school is needed in the easterly section of the city, not the westerly, and that the decision on the part of the defendants to locate this new school on the west side of the city is an unreasonable and arbitrary exercise of discretion. And the prayers for relief in the second count are the same as I have already referred to in the first count.
On June 5, 1962 the plaintiffs filed their complaint with this court and secured a temporary restraint ordering the defendant to desist and refrain from incurring further expenses or proceeding with the construction of the proposed high school, and the defendants were ordered to show cause why an interlocutory injunction should not be entered restraining the defendants in accordance with the demands of the complaint pending the trial of this action.
The defendants have countered with a motion to dismiss the complaint on the ground that the plaintiffs failed to comply with the provisions of R.R. 4:88 and specifically R.R. 4:88-15, namely, the procedure for instituting a proceeding in lieu of prerogative writ in the Law Division within 45 days after the meeting of the Board of Finance in January 1961, and the defendants move to dismiss the complaint on the ground that it fails to state a cause of action and say that the plaintiffs have no standing to maintain an action in this court where they seek the relief which I have already mentioned, and the defendants also move for a dissolution of the restraint entered on June 5. In substance, the defendants' motion, being supported by affidavits, is a motion for summary judgment under R.R. 4:58.
The important date of the action taken by the municipality in this case is, of course, January 12, 1961, which is the date that the resolution was adopted by the Board of Finance of the City of Paterson which authorized the *55 transfer of park lands to the Board of Education for school purposes. R.R. 4:88 prescribes the procedure for a review of a municipal action by a proceeding brought in lieu of prerogative writ, and the time limitation in which to bring such a proceeding is set forth in R.R. 4:88-15 being within 45 days of the accrual of the right to review, and it has been held that the expiration of the 45-day period in which to institute proceedings for review pursuant to R.R. 4:88-15 gives a vested right in the party against whom the cause of action existed to be forever free from prosecution thereof. See Schultze v. Wilson, 54 N.J. Super. 309, 322 (App. Div. 1959), certif. denied 29 N.J. 511 (1959); Theresa Grotta Home v. North Caldwell, 19 N.J. Super. 331, 337 (App. Div. 1952).
Accordingly, for this court to have jurisdiction of this case the municipal act complained of must be one which can be attacked collaterally, such as one which is ultra vires, void or unconstitutional. In such a case, this court will take jurisdiction and grant relief.
However, where the act complained of is not one which falls into this latter category, the complainants are left to their remedy under R.R. 4:88. Hence, in the matter before us if the action of the Board of Finance authorizing the transfer of park lands to the Board of Education for school purposes is not ultra vires, void or unconstitutional the plaintiffs cannot be granted relief in this court.
Let us first determine whether or not the plaintiffs have any vested property rights as alleged which were taken away by the city's action. I have carefully reviewed the cases cited by the parties, particularly the many cases cited by the plaintiffs, and have come to the conclusion that they do not have a vested property right in park lands.
Here the city acquired the property by an unrestricted deed. The land was used for park purposes apparently for many years. The plaintiffs own property adjacent to it. However, this is not a case where the city holds these lands *56 as trustee. The city owns the fee. The city is not bound by any restrictive covenants, implied or otherwise, such as we find in cases where the municipality does not own the fee but merely holds the lands in trust dedicated for park purposes.
I believe the cases of Reichelderfer v. Quinn, 287 U.S. 315, 53 Sup. Ct. 177, 77 L.Ed. 331, decision by the United States Supreme Court of 1932, and Thayer v. Boston, a United States District Court case decided in 1913, cited at 206 F. Reporter, p. 969 (D. Mass.), are authority for this conclusion. I also suggest an examination of 83 A.L.R., page 1435, the annotations which hold in substance that where the government, federal, state or municipal, is the absolute owner of lands which it has devoted to park purposes, no right of the owners of the neighboring property is infringed by its diversion to other public uses.
I am satisfied that N.J.S.A. 40:60-39 is not unconstitutional and it is a proper statutory authority for the city to convey park lands to the Board of Education. Plaintiffs seem to allege that under statute N.J.S.A. 40:60-39 a public hearing is required before the city can act to convey such property. I do not so interpret the statute. The statute seems to require what is known as a legislative determination. And that is what occurred here.
Now the next question is whether the Board of Finance is the governing body of the City of Paterson referred to in N.J.S.A. 40:60-39, or is the Board of Park Commissioners such governing body? If the Board of Finance is not the governing body of the city referred to in N.J.S.A. 40:60-39, then the conveyance of park lands to the Board of Education was a nullity and void and should be set aside.
R.S. 40:42-2, giving the definition of the governing body referred to in the subtitle of municipalities, says:
"The term `governing body,' where used in this subtitle, shall be construed to mean the board or body in each municipality designated by statute effective in such municipality as the board or *57 body having control over the subject matter in connection with which the term is used, and having the power and authority to legislate thereon, * * *."
Paterson, of course, has a unique form of government in this State. It is sometimes referred to as the strong type of government, where its primary governmental functions are controlled by boards appointed by the mayor.
It seems to me after reviewing the statutes, both the statute pertaining to the Board of Finance and the statute pertaining to the Park Commissioners and their powers, that the statements contained in the briefs submitted on behalf of the city pertaining to the powers of the Board of Finance are probably as fully developed as it could be stated, and so I will read it, referring to this particular statute which I have just cited, namely, R.S. 40:42-2, where it said the governing body shall be construed to mean the board or body designated by statute in such municipality as the board having control over the subject matter in connection with which the term is used.
The subject matter in the case for us is the question of transfer of municipally owned land. And I quote from the city's brief at page 8:
"The Board of Finance is responsible for the management of the City's finances. It possesses many implied powers incident to the raising and management of funds for the operation of the City. One of these is the allocation of the City's resources. The Board of Finance is the hub of the Paterson government; without funds no one of the other Boards could function. The City Government possesses the taxing power and certain real property within the City. The taxing power is clearly within the jurisdiction of the Board of Finance. The power to allocate municipally owned land is closely related to the power to tax. Every decision with regard to such lands must be made with regard to the City's finances. In essence, a use of City owned land for public purposes is an expenditure of the City's funds. For, if the land were not so utilized, it would be sold yielding revenue and subjecting it to taxes. Only that Board having control of the City's finances can decide how to use the lands and the decision with regard to allocation of the land is to be distinguished from what is done with the land once allocated. It is then that the various other boards assume jurisdiction. It must *58 always be remembered however, that such land may be re-allocated depending upon what will best serve the public interest. The Board of Finance retains a reserved power to make such re-allocation or to put it more homily, the Board of Finance has the ultimate responsibility for `spending the City's funds.'"
I am satisfied from my examination of the law that the governing body referred to in N.J.S.A. 40:60-39, the governing body authorized to convey property to the Board of Education in this case, refers to the Board of Finance of the City of Paterson. In my opinion, the Board of Park Commissioners, the powers of which are set forth in R.S. 40:184-35, possesses only managerial powers over the park lands allocated to them.
I am satisfied that there is no evidence here of what has been described as a palpable abuse of discretion which could constitute an ultra vires act which would require this court to take jurisdiction of the action.
Finally, it is quite evident from the circumstances presented in this case that the plaintiffs have waited many, many months before bringing this action. They very clearly are guilty of laches and they should not be granted the relief which they seek.
I am satisfied that the plaintiffs' application for an interlocutory injunction should be denied, that the temporary restraint should be dismissed, and I am also satisfied that the plaintiffs' complaint does not set forth a claim upon which relief could be granted by this court, and that the defendants are entitled to a summary judgment of dismissal. An appropriate form of judgment can be presented.