710 A.2d 352

Latasha HIRD

v.

CITY OF SALISBURY.

No. 777, Sept. Term, 1997.

Court of Special Appeals of Maryland.

May 27, 1998.

Richard W. Durry (McMullen, Drury & Pinder, P.A., Towson, and Linda E. Percy, Timonium, on the brief) for appellant.

Robert A. Eaton, Salisbury, for appellee.

Argued before DAVIS, HARRELL and BYRNES, JJ.

BYRNES, Judge.

This appeal presents the question whether a written order of a police chief increasing a hearing board's recommended disciplinary penalty against a law enforcement officer is final, for purposes of circuit court review, before the chief has met with the officer and allowed her to be heard on the record, as required by statute. We hold that such an order is not final.

## FACTS

Police Officer Latasha Hird, appellant, joined the City of Salisbury Police Department in May, 1995. Three months later, on August 24, 1995, another officer on the force filed a written complaint against Officer Hird, alleging that she had violated certain departmental rules by using foul language and a vulgar gesture during a conversation with two fellow officers

in the Wicomico County Circuit Courthouse, in front of onlookers.

Colonel E. Guthrie investigated the complaint and recommended to Police Chief Coulbourn M. Dykes that Officer Hird be charged with three violations of Police Department "Written Directives." Colonel Guthrie also recommended that Officer Hird be punished for the violations by the loss of two days leave. Officer Hird was furnished a written document entitled "Notification of Approved Disciplinary Action" and responded to it by declining to accept the disciplinary action and electing a departmental disciplinary hearing board, as provided under the Law Enforcement Officer's Bill of Rights, Md.Code Ann. (1992 Repl.Vol., 1995 Supp.), Art. 27, §§ 727, *et seq.* ("LEOBR").

A one-member hearing board convened on April 24, 1996 to hear the charges against Officer Hird. The hearing board took testimony from several witnesses, received documents into evidence and, after deliberating, sustained two of the three charges. After taking evidence in mitigation, the hearing board recommended that Officer Hird undergo counseling as punishment for one violation and that she lose one day of leave as punishment for the other violation. The hearing board issued a written report detailing its findings and recommendations. The report was sent to Officer Hird and to Chief Dykes.

Chief Dykes reviewed the entire record of the hearing board and its written report. On May 20, 1996, he composed and signed a letter to Officer Hird concerning the disciplinary action against her. The letter reads, in relevant part:

You have been found guilty of two charges as a result of conduct displayed in the Circuit Court in August of 1995. I find the conduct unprofessional, disturbing, and that it reflects neither the caliber, quality nor standards of the personnel of this department. I further believe that conduct of this nature undermines the efficiency and the mission of this department. *The conduct in question is serious*

*and I believe the recommended discipline should be increased.*

*Therefore, as Chief of Police for the Salisbury Police Department, I am increasing the penalty in this instance to the original recommendation of the loss of two day's sick leave for the aforementioned reasons.*

(Emphasis supplied).

Chief Dykes did not send the May 20, 1996 letter to Officer Hird. Rather, on May 23, 1996, he called Officer Hird into his office and personally advised her of his decision to increase her penalty by reading his May 20, 1996 letter aloud and giving her a copy of it. According to Janis B. Shores, who is Chief Dykes's secretary and was in attendance at the May 23, 1996 meeting, Chief Dykes asked Officer Hird if she had anything to say for the record; she responded that she had no comment. That meeting was the first that Officer Hird learned of Chief Dykes's decision to increase her penalty from that recommended by the hearing board.

On June 20, 1996, Officer Hird filed a "Petition for Judicial Review of the Decision of the Chief of Police," pursuant to Md. Rule 7–201, in the Circuit Court for Wicomico County. The City of Salisbury ("City"), appellee, filed a "Preliminary Motion to Dismiss," asserting that Officer Hird's petition was untimely under Md. Rule 7–203. The circuit court held a hearing on the motion and granted it. This appeal followed. Officer Hird presents for review the single question whether the circuit court erred in ruling that her petition for judicial review was not timely filed.

## DISCUSSION

When reviewing the grant of a motion to dismiss, "an appellate court must determine whether the trial court was legally correct." *Hrehorovich v. Harbor Hospital,* 93 Md.App. 772, 785, 614 A.2d 1021 (1992), *cert. denied,* 330 Md. 319, 624 A.2d 490 (1993)(citing *Bramble v. Thompson,* 264 Md. 518, 520, 287 A.2d 265 (1972)). Our task in this case is to ascertain

whether the circuit court was legally correct in finding that Officer Hird's petition for judicial review was filed too late.

Section 731 of the LEOBR pertains, *inter alia,* to the issuance by the chief of police of a final order after a disciplinary hearing board has made its findings and decision about guilt, which are binding on the chief, and its recommendation about the imposition of a penalty, which is not binding on him. It provides, in pertinent part:

*(c) Review by chief; final order by chief.*—The written recommendations as to punishment are not binding upon the chief. Within 30 days of receipt of the hearing board's recommendations, the chief shall review the findings, conclusions, and recommendations of the hearing board and then the chief shall issue a final order. The chief's final order and decision is binding and. may be appealed in accordance with this subtitle. Before the chief may increase the recommended penalty of the hearing board, the chief personally shall:

(1) Review the entire record of the hearing board proceedings;

(2) Meet with the law enforcement officer and permit the law enforcement officer to be heard on the record;

(3) Disclose and provide to the officer in writing at least 10 days prior to the meeting any oral or written communication not included in the hearing board record on which the decision to consider increasing the penalty is based, in whole or in part; and

(4) .State on the record the substantial evidence relied on to support the increase of the recommended penalty.

LEOBR § 731.

LEOBR § 732 establishes that an appeal from a decision rendered under LEOBR § 731 shall be taken to the circuit court for the appropriate county pursuant to former Md. Rule B2. On March 30, 1993, the Court of Appeals rescinded subtitle B of the Maryland Rules of Procedure, effective July 1, 1993, and substituted in its place Title 7 of the Maryland Rules, which governs judicial review of administrative agency

decisions. Md. Rule 7–203 (the successor to former Rule B4), entitled "Time For Filing Action," provides:

(a) **Generally.**—Except as otherwise provided in this Rule or by statute, a petition for judicial review shall be filed within 30 days after the latest of:

(1) the date of the order or action of which review is sought;

(2) the date the administrative agency sent notice of the order or action to the petitioner, if notice was required by law to be sent to the petitioner; or

(3) the date the petitioner received the notice of the agency's order or action, if notice was required by law to be received by the petitioner.

In the case *sub judice*, Officer Hird's petition for judicial review was filed 31 days after Chief Dykes's May 20, 1996 letter purporting to increase the penalty recommended by the hearing board. The trial court determined that the May 20, 1996 letter constituted the "order or action of which review [wa]s sought," under Md. Rule 7–203(a)(1), and ruled that Officer Hird's petition was untimely because it was filed more than 30 days after that date. The trial court also ruled that pertinent provisions of the LEOBR did not require that Officer Hird receive notice of Chief Dykes's final order and, accordingly, subsection (a)(3) of Rule 7–203 was inapplicable to her case.

Officer Hird contends that the trial court erred in its legal interpretations of LEOBR § 731(c) and Md. Rule 7–203(a)(1) and (a)(3). She argues that, until May 23, 1996, when Chief Dykes met in person with her to advise that he was increasing the penalty recommended by the hearing board, there was no final action or order under LEOBR § 731(c) that could be reviewed by the circuit court. Her petition was timely, she maintains, because it was filed within 30 days of May 23, 1996, the date of the order or action that she was seeking to have reviewed, in compliance with Md. Rule 7–203(a)(1). Officer Hird also argues that LEOBR § 731(c) implicitly required that she receive notice of the chief's increase in the recom-

mended penalty, that she did not receive any such notice until May 23, 1996, and that her petition was timely filed within 30 days of then, in compliance with Md. Rule 7–203(a)(3).

The City counters that the May 20, 1996 order was final as of that day because Chief Dykes's decision to increase Officer Hird's penalty had been made and put in writing by then and that the action taken by Chief Dykes on May 23, 1996 was merely ministerial, to effectuate the already final action and order. The petition was thus untimely under Md. Rule 7–203(a)(1) as it was filed more than 30 days after the action that Officer Hird sought to have the lower court review. The City also argues that LEOBR § 731(c) does not provide that an officer receive notice of the chief's action in increasing the penalty recommended by a hearing board and as such Md. Rule 7–203(a)(3) is inapplicable. Finally, the City argues in the alternative that if the action or order increasing Officer Hird's punishment was not final until May 23, 1996, as Officer Hird maintains, the petition for judicial review was timely on the issue of penalty but not on the issue of guilt.

LEOBR § 731 specifies two forms of disciplinary decisions that may be judicially reviewed: final orders by the chief, under LEOBR § 731(c), and certain orders or decisions of the hearing board, under LEOBR § 731(d). The latter subsection does not apply in this case. LEOBR § 731(c) provides that, within 30 days of his receipt of the hearing board's recommendation, the chief must issue a "final order." If after reviewing the findings, conclusions, and recommendations of a hearing board, the chief decides to adopt the penalty recommended by the board or to decrease it, there are no additional steps that he must take before issuing his final order. By contrast, if the chief decides to increase the penalty to be imposed from that recommended by the hearing board, he "personally shall" take the steps enumerated in LEOBR § 731(c)(1) through (4) before doing so. Three of those steps will apply in all cases (reviewing the entire record of the hearing board proceedings, meeting with the officer and permitting the officer to be heard on the record, and stating on the record the substantial evidence relied on to support the

increase of the recommended penalty); one step may or may not apply, depending on the case, and indeed did not apply to Officer Hird (disclosing and providing to the officer in writing 10 days before their meeting any communication not included in the hearing board record on which the decision to consider increasing the penalty is based).

▪ Generally, an administrative agency's action "is final if it determines the rights of the parties and leaves nothing further for the agency to do." *Maryland Commission on Human Relations v. Baltimore Gas & Electric Co.*, 296 Md. 46, 57, 459 A.2d 205 (1983); *Holiday Spas v. Montgomery County Human Relations Commission*, 315 Md. 390, 395, 554 A.2d 1197 (1989); *Md. Commission v. Downey*, 110 Md.App. 493, 527, 678 A.2d 55 (1996); *GMC v. Public Service Commission*, 87 Md.App. 321, 337, 589 A.2d 982 (1991). In the instant case, by May 20, 1996, Chief Dykes had completed two of the three measures that he was required to take before increasing the penalty recommended by the hearing board: he had read the full record of the hearing board and had drafted the letter constituting his "on the record" statement of the substantial evidence that he relied upon to support the increase.[1] He had not yet satisfied the obligation to "meet with [Hird] and permit [her] to be heard on the record."

▪ The plain language of LEOBR § 731(c) calls upon the chief to take enumerated steps, including meeting with the officer, *before* increasing the recommended penalty. "Where a statute establishes a condition precedent for action authorized to be taken by the agency, the agency action may not validly be taken until that condition has been met." *Fraternal Order of Police v. Mehrling*, 343 Md. 155, 177, 680 A.2d 1052 (1996).

[1] The LEOBR does not define the term "the record," as used in section 731(c). It is a basic rule of statutory construction that we will determine the intent of the legislature by "consider[ing] the language of an enactment in its natural and ordinary signification." *Police Commissioner v. Dowling*, 281 Md. 412, 418, 379 A.2d 1007 (1977). The ordinary understanding of the phrase "on the record" is in writing or recorded so as to be capable of being reduced to writing, as opposed to oral and unrecorded.

Until Chief Dykes satisfied every pre-condition for increasing the hearing board's recommended penalty for Officer Hird, including meeting with her and giving her the opportunity to be heard on the record, his action in increasing the penalty was not validly taken and could not be final. Clearly, as of May 20, 1996, there was something additional and indeed essential for Chief Dykes to do to finalize his decision to increase the penalty to be imposed against Officer Hird. Only after Chief Dykes's May 23, 1996 meeting with Officer Hird had taken place did there exist a validly taken action and order that left "nothing further for the agency to do."

The City's arguments to the contrary are unpersuasive. The May 23, 1996 meeting between Chief Dykes and Officer Hird was not a ministerial event held solely for the purpose of implementing a final order. That meeting constituted the imposition of a penalty against Officer Hird. Like sentencing in a criminal prosecution that has produced a conviction and the assessment of damages in a civil proceeding when there has been a finding of liability, the imposition of a penalty in a disciplinary action against a police officer that has resulted in charges being sustained is a necessary last stage in the proceeding. *Cf. Sigma Reprod. Health Ctr. v. State,* 297 Md. 660, 665, 467 A.2d 483 (1983)("general rule in criminal cases is that no final judgment exists until after conviction and sentence has been determined, or, in other words, when only the execution of the judgment remains"); *Shenasky v. Gunter,* 339 Md. 636, 638, 664 A.2d 882 (1995)(in action for money damages, order that determines liability but fails to make determination of damages is not final disposition of claim). The right to a hearing afforded by LEOBR § 730 exists only for those disciplinary actions such as demotion, dismissal, transfer, loss of pay, reassignment or others that "would be considered a punitive measure." LEOBR § 730(a). The final imposition of a penalty in such a disciplinary action is a critical and integral part of the proceeding itself, not a clerical act. *Compare Badian v. Hickey,* 228 Md. 334, 338, 179 A.2d 873 (1962)(finality of zoning decision by county council did not await the "mere ministerial act" of formal adoption of the transcript of the

minutes of meeting at which decision was made); *Clarke v. Greenwell,* 73 Md.App. 446, 452, 534 A.2d 1344, *cert. denied,* 312 Md. 601, 541 A.2d 964 (1988)(finality of zoning decision of county commissioners did not await purely ministerial act of attaching changes to zoning map).

The City's reliance upon *Police Commissioner of Baltimore City v. Dowling,* 281 Md. 412, 379 A.2d 1007 (1977), is misplaced. In *Dowling,* the Court of Appeals interpreted LEOBR § 731 as it existed in 1976, before it was amended to authorize expressly the chief of police to reject a hearing board's recommended penalty against an officer. The Court held that the 1976 version of LEOBR § 731 could be harmonized with a state statute granting the Police Commissioner of Baltimore City the right to impose disciplinary penalties against officers by interpreting it to require a hearing board to transmit its findings and recommendations to the Police Commissioner of Baltimore City "for his ultimate decision." 281 Md. at 423, 379 A.2d 1007. The Court then explained: "[T]he Commissioner would notify the law-enforcement officer involved of his ultimate decision. It is from this decision that the appeal would lie. The time for the appeal would be so computed." *Id.*

The City contends that the above-quoted language in *Dowling* establishes that the time for Officer Hird to file her petition for judicial review started to run on May 20, 1996, when Chief Dykes made his *decision* to reject the penalty recommended by the hearing board. This argument ignores the plain language of LEOBR § 731(c), specifying that "the chief's *final order and decision* is binding and may be appealed in accordance with this subtitle." (emphasis supplied). Until a final order embodying the decision to be reviewed is issued, an "appeal," by way of circuit court review, will not lie; and an order is not final, as we have explained, until there is nothing left for the agency to do, which in this case was not until May 23, 1996.[2]

---

2. As the Court observed in *Colao v. County Council,* 346 Md. 342, 359, 697 A.2d 96 (1997), actions for judicial review of Executive Branch

*Colao v. Prince George's County,* 109 Md.App. 431, 675 A.2d 148 (1996), *affirmed,* 346 Md. 342, 697 A.2d 96 (1997), also cited by the City, is likewise inapposite. That case addressed the proper disposition of a petition for judicial review of an agency's denial of a zoning application that was filed after the 30 day period for doing so set forth in Md. Rule 7–203. Ultimately, the Court of Appeals held that the 30 day limit is in the nature of a statute of limitations. There was no dispute in that case over the finality *vel non* of the agency action for which judicial review was sought.

We also agree with Officer Hird's second contention that Md. Rule 7–203(a)(3) applied to her petition as well. Although LEOBR § 731 does not expressly state that when a chief increases the penalty against an officer above that recommended by a hearing board, the officer is entitled to receive notice of the chief's action, such a requirement is implicit. The police chief cannot meet personally with an officer to permit him to be heard on the record before increasing the recommended penalty, as required by LEOBR § 731(c)(2), without at the same time informing the officer of the action to be taken. "Implicit in the requirement that an appeal lies only from a final decision ... are the correlative requirements that the aggrieved party know that the decision has been made and that the decision is final." *Crofton v. Anne Arundel County,* 99 Md.App. 233, 243, 636 A.2d 487, *cert. denied,* 335 Md. 81, 642 A.2d 192 (1994); *Clarke, supra* at 452–53, 534 A.2d 1344. Accordingly, LEOBR § 731(c)(2) is tantamount to a requirement that the officer receive notice of the action. If it were interpreted otherwise, the chief could issue an order increasing the penalty without affording any notice whatsoever to the officer, a result that is plainly not contemplated by the statute, as it would undermine the finality of any such order.

---

agency decisions were for years mischaracterized as "appeals" even though they involve the exercise of the circuit court's original jurisdiction.

Finally, for the reasons that we have already explained, there is no merit to the City's alternative contention that Officer Hird's petition for judicial review was timely with respect to the penalty imposed against her but not with respect to the finding of guilt against her. The hearing board's finding of guilt against Officer Hird was not subject to judicial review in and of itself. It could be reviewed only as part of a final order issued by Chief Dykes that also imposed a penalty, pursuant to LEOBR § 731(c). That final order was issued on May 23, 1996. Officer Hird's petition for judicial review of that order, and all issues encompassed by it, was timely when it was filed on June 20, 1996.

**JUDGMENT REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**