935 A.2d 689

**Anthony LANZARON, et ux.**

v.

**ANNE ARUNDEL COUNTY, Maryland, et al.**

**No. 22, Sept. Term, 2007.**

Court of Appeals of Maryland.

Nov. 9, 2007.

John W. Butler (Alison B. MacDonald, Sher & Blackwell LLP, Washington, DC, on brief), for appellants.

Sager A. Williams, Jr. (Blumenthal, Delavan & Williams, P.A., Annapolis, on brief), Sarah M. Iliff, Sr. Asst. Cty. Atty., Anne Arundel Cty., on brief, for appellees.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER, (Retired, specially assigned), and DALE R. CATHELL, (Retired, specially assigned), JJ.

CATHELL, J.

Crandell Cove, Inc. ("appellee"), a non-profit corporation organized to construct a residential facility for the elderly in Anne Arundel County, applied for and received a special exception and variances enabling it to construct a nursing home. A subsection of Article 28 of the Anne Arundel County Code required the special exception and variances to be utilized within specific time frames. As a result of difficulties encountered complying with the time limitations and pursuant to a broad reading of Article 3 of the Anne Arundel County Code authorizing the granting of variances from the provisions of the zoning article (Article 28), appellee requested a time variance permitting a one-year extension to implement the use authorized by the special exception and variances or obtain a building permit, and an additional one and one-half years to complete the facility and have it fully operational. That request was initially granted by Anne Arundel County's Administrative Hearing Officer (the "Hearing Officer"). The Lanzarons ("appellants"), who are neighboring landowners, appealed the Hearing Officer's approval to the Anne Arundel County Board of Appeals (the "Board"), which issued a written decision that upheld the Hearing Officer's action and granted appellee's time variance.[1] Appellants then filed a petition for judicial review in the Circuit Court for Anne Arundel County, which affirmed the decision of the Board. Finally, appellants noted an appeal to the Court of Special Appeals. Before the case was heard by that Court, we issued a writ of certiorari, on our own initiative, *Lanzaron v. Anne Arundel County*, 399 Md. 32, 922 A.2d 573 (2007), in respect to the following issue:

"Did the Anne Arundel County Code in effect at the relevant time authorize the Board to extend by variance the Code's deadline for project implementation and completion under Crandell Cove's previously authorized variances and special exception?"

---

1. In this appeal we are only concerned with the Board's grant of the time variance.

We hold that the variance power at issue in this case authorized the Board to issue time variances, and that under the language used here, the general variance power found in Article 3 reaches all provisions in Article 28 of the Anne Arundel County Code (the Zoning Code) except where the general power is restricted by specific language limiting the general variance power.

## I.  Facts

Appellee sought to construct a congregate living facility[2] in Anne Arundel County on property that was split zoned R1–Residential District and OS–Open Space District.  On February 25, 2003, appellee obtained from Anne Arundel County initial zoning approval in addition to a special exception and certain variances that would allow for the development of a suitable living facility on a portion of the land.  These initial approvals were appealed by appellants, but those appeals were ultimately dismissed by the Board on September 11, 2003.  That decision became final after 30 days, when no petition for judicial review of the initial approvals was filed.

As a result of difficulties in obtaining the necessary permits for construction under multi-tiered County and State requirements, appellee was unable to comply with the statutory time restriction applicable to the original zoning variances found in Article 28, requiring that a building permit be obtained within one year of the variance grant, and that construction be completed within two years of the grant.[3]  Additionally, it was

---

**2.**  The phrase "congregate living facility" was used by appellee in its brief to refer to a living facility that:  "[W]ould provide affordable housing, and a modest level of assistance with daily activities, for elderly adults who are no longer able to live alone or maintain their homes."

**3.**  The zoning provision, found in Article 28 of the Anne Arundel County Code (the "Code") (unless otherwise stated, all references are to the Code in effect at the time) stated, in relevant part:

" § 11–102.2.  Lapse of variance.

(a) Except as provided in subsections (b) and (c) of this section, a variance granted under the provisions of this article shall become void unless a building permit conforming to plans for which the

unable to comply with the statutory time restrictions applicable to the original special exception, which required that action to implement the use be initiated within one year of approval and that the use be completed and in operation within two years of approval.[4]  Therefore, on September 10, 2004 (allowing for tolling, within one year of the date the initial approvals became final after the Board dismissed appellants' initial appeal to the Board), appellee requested a time variance to extend the expirations of its variances and special exception under the original zoning approvals.  Appellants objected to the variances of the time restrictions and a hearing was held before the Administrative Hearing Officer of Anne Arundel County on December 9, 2004.  The Hearing Officer ultimately granted the time variance,[5] and that decision was appealed by the appellants to the Board of Appeals.  Accordingly, a hearing was held on June 29–30, 2005.  There, appellants raised several issues, including the authority of the Board to grant such variances, the timeliness of the request for the time variances, and whether the appellees met the statutory standards set forth in the Code to grant such a variance.

---

variance was granted is obtained within one year of the grant and construction is completed within two years of the grant."
Anne Arundel County Code (1985, 2004 Supp.), Article 28, § 11–102.2.

4. That section of the Code states, in relevant part:
"**12–107.  Rescission.**
(a) Except as provided in subsection (b) or subsection (c) of this section, approval of a special exception is rescinded by operation of law if:
(1) action to implement the use is not begun within one year after the decision of the approving authority;  and
(2) the use is not completed and in operation within two years after the decision."
Anne Arundel County Code (1985, 2002 Supp.), Article 28, § 12–107.
The provisions relating to the Board of Appeal's power to grant variances and special exceptions are found in Article 3, *infra*, of the County Code.

5. Apparently, Anne Arundel County consistently considered the time restriction to be subject to the general variance power.  At oral argument, we were advised that more than 130 similar time variances have been granted since 1995.

The local implementation of Md.Code (1957, 2005 Repl.Vol.), Article 25A, § 5's grant of general authority to grant variances is found in Article 3, § 2–107 of the County Code. It states, in relevant part:

" § 2–107.   **Standards for granting variance.**

(a) The County Board of Appeals may vary or modify the provisions of Article 28 [the Zoning Code] of this Code when it is alleged that practical difficulties or unnecessary hardships prevent carrying out the strict letter of that article, provided the spirit of law shall be observed, public safety secured, and substantial justice done." (Alteration added.)

Anne Arundel County Code (1985, 2004 Supp.), Article 3, § 2–107.

On January 11, 2006, the Board issued a well-reasoned decision granting the time variance. It considered the statutory factors found in Article 3, § 2–107 of the Code in granting the time variance, and made appropriate findings of fact. Those findings of fact are not at issue in this case. The Board made no findings as to whether it had the authority to grant the variance.

While not determinative in the instant case, the County Council has since clarified its future intent whether time variances may be granted by the Board, by code amendment enacted in May 2005. The new provision states:

" § 18–16–405.   **Time period after which variances and special exceptions are void.**

(a) **Expiration by operation of law.**   A variance or special exception that is not extended or tolled expires by operation of law unless the applicant within 18 months of the granting of the variance or special exception (1) obtains a building permit or (2) files an application for subdivision. Thereafter, the variance or special exception shall not expire so long as (1) construction proceeds in accordance with the permit or (2) a record plat is recorded among the land records pursuant to the application for subdivision, the applicant obtains a building permit within one year after

recordation of the plat, and construction proceeds in accordance with the permit.

(b) **Extension for phasing or other good cause.** In deciding an application for a special exception use, the Administrative Hearing Officer may extend the time periods set forth in subsection (a) for the use and any variance granted in connection with it when the application includes a phasing plan or sets forth facts that demonstrate other good cause why the time periods set forth in subsection (a) reasonably cannot be met.

(c) **Extension by variance.** An applicant may file an application for a variance to extend the time periods set forth in subsection (a).

(d) **Tolling.** The pendency of litigation may toll the time periods set forth in subsection (a) to the extent provided by law."

Anne Arundel County Code (2005), Article 18, § 18–16–405.[6]

On February 7, 2006, appellants filed a petition for judicial review challenging the Board's decision. Anne Arundel County and appellee responded to the petition on February 14, 2006, and February 24, 2006, respectively. Oral arguments were heard in the Circuit Court for Anne Arundel County on October 11, 2006. There, the review was primarily centered on the issue that is presently before this Court, i.e., whether the Board had the authority to grant the time variances to the expiration periods of the special exception and variances granted at the time of the original zoning approval.

An order affirming the Board's decision was issued on October 12, 2006, by the Circuit Court for Anne Arundel County. On November 2, 2006, appellants noted an appeal to

---

**6.** Appellants argue in their brief that this subsequent action taken by the County Council, in specifically granting the Board the power to grant time variances, implies that such a power did not exist prior to the Code's modification in 2005. While in light of our decision, it is not necessary to directly resolve this issue, we note that the County Council's actions in 2005 could also be interpreted merely as a "belt and suspenders" approach clarifying the issue that, as a result of this case, was then pending in the courts and is presently before us.

the Court of Special Appeals. Before the case was heard, this Court issued a writ of certiorari on May 9, 2007.

## II. Standard of Review

As stated above, appellants contend that the Board of Appeals had no authority to grant the time variance, and as such, their administrative decision was based on an erroneous conclusion of law. In reviewing an agency decision, this Court has stated:

"[A] reviewing court may always determine whether the administrative agency made an error of law. Therefore, ordinarily, the court reviewing a final decision of an administrative agency shall determine (1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision."

*Baltimore Lutheran High School Ass'n, Inc. v. Employment Sec. Admin.,* 302 Md. 649, 662, 490 A.2d 701, 708 (1985). More recently, we have stated that:

"A court's role is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law."

*United Parcel Service, Inc. v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226, 230 (1994). *See, e.g., Evans v. Burruss,* 401 Md. 586, 933 A.2d 872 (2007) (No. 1, September Term, 2007) (filed October 12, 2007), *Watkins v. Sec'y, Dep't of Pub. Safety & Corr. Serv's,* 377 Md. 34, 46, 831 A.2d 1079, 1086 (2003), *Catonsville Nursing Home, Inc. v. Loveman,* 349 Md. 560, 568, 709 A.2d 749, 753 (1998), *Younkers v. Prince George's County,* 333 Md. 14, 19, 633 A.2d 861, 863 (1993).

## III. Discussion

As indicated, the power to grant variances is set forth in the Anne Arundel County Code, Article 3, § 2–107, which specifically states: "The County Board of Appeals may vary or modify the provisions of Article 28 of this Code...."

■ Appellants contend that the power to issue variances to the provisions of Article 28, enumerated in Article 3 of the Code, is limited by the more specific provisions found in Article 28. More specifically, they argue that certain Article 28 subsections where time limitations are discussed,[7] serve as evidence of the legislative intent to limit by time the entire variance and special exception provisions. Appellants further contend that the general language found in the special exception and variance provisions also tend to establish the legislative intent to limit the variance power of those provisions. Appellants also argue that other specific time exceptions in the Code mean that the general variance power cannot be otherwise exercised to modify the time requirements.[8] Their arguments dealing with specific exceptions to the variance and special exception provisions found in other subsections miscon-

---

**7.** Those exceptions are as follows:

"(b) With respect to a variance for a substation, the approving authority may, for good cause shown, extend the time periods set forth in subsection (a) of this section by up to two and one-half years each.

(c) In years in which wet season percolation testing is suspended or otherwise delayed, a variance granted on properties restricted to wet season testing shall become void unless a building permit conforming to plans for which the variance is granted is issued within one year of the completion of the first available wet season percolation test and construction is completed within two years of the issuance of the building permit."

Anne Arundel County Code (1985, 2004 Supp.), Article 28, § 11–102.2.

"(b) A special exception for a clay and borrow pit or sand and gravel operation is rescinded by operation of law if action to implement the use is not begun within one year after approval of all necessary permits, but no later than two years from the date of the granting of the special exception, unless the applicant has diligently pursued all permits and not received them despite due diligence.

(c) With respect to a special exception for a substation, the approving authority may, for good cause shown, extend the time periods set forth in subsections (a)(1) and (2) of this section by up to two and one-half years each."

Anne Arundel County Code (1985, 2002 Supp.), Article 28, § 12–107.

**8.** As indicated in our opinion in the instant case, the application of the general power to grant variances may (or may not) apply to these provisions as well. We do not, however, resolve such issues because they are not before us in this case.

strues the legislative intent behind those subsections, in addition to misconstruing the meaning of the plain language found in Article 3 that grants the general variance power.

In *Rose v. Fox Pool Corp.*, we stated:

" 'When called upon to construe a particular statute, we begin our analysis with the statutory language itself since the words of the statute, construed according to their ordinary and natural import, are the primary source and most persuasive evidence of legislative intent.' "

335 Md. 351, 359, 643 A.2d 906, 909 (1994) (*citing Comptroller v. Jameson*, 332 Md. 723, 732, 633 A.2d 93, 97–98 (1993)). It is clear that there is nothing in the plain language of Article 3 that limits the ability of the Board to grant the time variances at issue in the case at bar. In the instant case, there is also nothing in the language of the time provisions of Article 28 to indicate that they were enacted to evidence an intent on the part of the County Council to further limit an already expressed general power to grant variances.

■ To find the legislative intent put forth by appellants would require this Court to go beyond the plain language of the general variance power of the statute. This is inconsistent with the general rules of statutory construction.

"When the language of a statute is plain and clear and expresses a meaning consistent with the statute's apparent purpose, no further analysis of legislative intent is ordinarily required."

*Rose v. Fox Pool Corp.*, 335 Md. at 359, 643 A.2d at 910 (*citing Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505, 515, 525 A.2d 628, 633 (1987)). The language of the variance power granted to the Board by Article 3, § 2–107(a) clearly states that it applies to the provisions of Article 28. That means that it applies to all of the provisions of Article 28, except as provided in Article 3. That variance power, contained in Article 3, clearly states in subsection (d) to which provisions of Article 28 it does not apply, and the provisions at issue in the case at bar are not among those listed.[9] Accord-

---

9. That exception states, in relevant part: "(d) This section does not apply to Title 1B, § 15–104.1, or to the provisions of Article 28 of this

ingly, Article 3 applies to all of the provisions of Article 28 unless a section states specifically that such section may not be modified by the use of the general variance provision. As the variances and special exception for which appellee seeks to obtain time variances are in Article 28 and nowhere in either Article 28 or in Article 3 is there any express statement that variances of the time requirement may not be granted, the plain language of Article 3 is clear.

In *Alviani v. Dixon*, 365 Md. 95, 775 A.2d 1234 (2001), while upholding a variance granted in that case, we noted a section of the general variance provisions of the Anne Arundel County Code that pointed out a specific exception, *supra*, of the kind that could trump the general variance provisions. In Article 3, § 2–107, where the general variance power is found, there is a specific subsection that provides, as we stated in *Alviani*, " '(d) *This section [§ 2–107] does not apply to Title 1B, § 15–104A of Article 28 of this Code.*' " *Alviani*, 365 Md. at 111, 775 A.2d at 1243. In order for the time limitations urged by appellants to be applied in the instant case, to be that type of specific exception that would immunize the time requirements from the general variance provisions, similar language and placement would normally be required. It simply does not exist under the language, placement and circumstances of the present case. We held in *Alviani:*

> "The Code grants the Board the authority to grant variances from sections within the code, except for the titles and sections enumerated in section 2–107(d) aforesaid.
>
> "The local legislative body clearly knew that it could except certain parts of the Code from the application of the variance provisions. [This] section ... was not one of the sections that was excepted."

*Alviani*, 365 Md. at 111, 775 A.2d at 1243. The legislative body clearly knew how to create exceptions and where to put them, i.e., normally in the same sections where the general

Code that are applicable to development in the Odenton Growth Management Area." Anne Arundel County Code (1985, 2004 Supp.), Article 3, § 2–107(d).

variance power was created—Article 3, § 2–107. The time requirements at issue in the case at bar are simply not exceptions to the general variance provisions of Article 28.

Additionally, we have long held that when a zoning decision has been made authorizing a particular action, which, by statute, must be taken by a certain time, that time, generally, does not begin (or continue) to run during a period in which opponents or other governmental agencies (or even in some cases—circumstances) have created conditions, such as permitting processes, appeals or other litigation, that block the taking of the particular action. We said in *Nutter v. City of Baltimore*, 230 Md. 6, 15–16, 185 A.2d 360, 364–65 (1962), that:

> "The language of Sec. 44 leaves little doubt, in our view, that the period of limitations for both the obtention of a building permit or a certificate of occupancy and the exercise of the rights and privileges approved by the Board and granted by the permit or certificate *runs from the date of the final action which allowed the valid issuance of the permit or certificate, either by the Zoning Commissioner if there was no appeal to the Board, or by approval of issuance by the Board, if there is no appeal to the City Court, or by that Court if there is no appeal to this Court, or by this Court if the final action is here* . . . .

> "We agree with Judge Foster that Sec. 35(g) 3 of the ordinance, which gives power to the Board upon appeal in specific cases to vary the terms of the ordinance, authorizes the granting, in proper cases, of extensions of time for the exercise of privileges previously officially granted by the Board." (Emphasis added.)

Other states have similarly held. In *Belfer v. Bldg. Comm'r*, 363 Mass. 439, 444–45, 294 N.E.2d 857 (1973), the Supreme Judicial Court of Massachusetts, held:

> "We conclude that the relief from time limitations given in cases . . . where a legal impediment exists to the use of a benefit, should also be given where an appeal from the granting of the variance creates equally real practical impediments to the use of a benefit. Otherwise a variance

which was lawfully awarded can be frustrated by the delay inherent in an appeal. Unless an appeal tolls the time period, many variances would be meaningless."

The Supreme Court of Rhode Island, in *Tantimonaco v. Zoning Bd.*, 102 R.I. 594, 599–600, 232 A.2d 385, 388 (1967), stated:

"The petitioners [opponents] argue that on this record it is clear that the subsequent decision of the board . . . is illegal and should be quashed. In support thereof they make several contentions, one of which is so clearly without merit as to be disposed of at once. It is, that by the terms of the Johnston ordinance, a building permit expires if not acted upon within six months. No work having been done within the six months . . ., they contend it was automatically vacated or revoked.

"[P]etitioners challenged the validity of that permit by seeking a review of the board's decision with the filing of their petition for certiorari. . . . Although the filing of such a petition does not act as a stay . . . common prudence understandably acts as a brake against incurring obligations, the benefits of which would be cancelled by an adverse decision of this court. Apart from the question as it may be affected by a change in the zoning regulations, we think it clear that the requirement of activating a permit set forth in an ordinance does not apply during such time as the legality of a permit is open to question by reason of litigation amounting to an appeal from the issuance thereof."

*Compare French v. District of Columbia Bd. of Zoning*, 658 A.2d 1023 (D.C.1995) (court construed a statute's language as specifically prohibiting a stay of enforcement) *and Gold v. Kamin*, 170 Ill.App.3d 312, 120 Ill.Dec. 595, 524 N.E.2d 625 (1988) (court noted that the time had expired because no stay or extension was sought during the initial time period).

*Nutter v. City of Baltimore, supra,* is a case that is even more relevant to the granting of time variances than indicated above. While the holding in that case was specific to the Baltimore City Code, we find its reasoning to be instructive in

this case. There, various citizens objected to the construction of an apartment house in Baltimore City. Among their several arguments, they contended that: "[T]he Board [of Appeals] has no right or power to extend the effective life of its approval of a variance or special exception, which it has previously approved, beyond the six months' period...." [10] *Nutter,* 230 Md. at 9, 185 A.2d at 361. In that case, the variance power gave the Board the power: " 'to authorize upon appeal in specific cases such variance from the terms of this Article as is necessary to avoid arbitrariness and so that the spirit of the ordinance shall be observed and substantial justice done.' " *Nutter,* 230 Md. at 13, 185 A.2d at 363. The trial court, which was later affirmed by this Court stated, in relevant part:

> " 'In my opinion the Board, in this case, had the power to vary the terms of the ordinance by granting the time extensions as it did.... Common knowledge and experience discloses it is frequently impossible to complete all steps necessary in the development of a large building project within the restricted period of time. I cannot believe it was the intention of the framers of the ordinance to impose impossible conditions on builders or fetter the Board with an arbitrary and unchangeable time limitation which the Board would be without power to extend in any case. * * * Great difficulty could only result from a hard and fast rule denying the Board power to act as it has and which power the Board has been exercising for many years. Many cases have shown that Maryland adheres to the doctrine that long established practice and procedures on the part of administrative agencies are not to be disregarded except for the most compelling urgent reasons.' "

---

**10.** The statute involved in *Nutter* provided: " '[T]he permit shall be obtained and the privilege granted thereunder shall be exercised ... within twelve months'...." and that permits obtained by a special exception or variance " 'shall be exercised by the grantee therein named within six months from the date of the final action which made the permit valid.' " *Nutter,* 230 Md. at 12, 185 A.2d at 363. This language, in relevant part, is essentially the same as the provisions in the present case.

Quoted in *Nutter*, 230 Md. at 13–14, 185 A.2d at 363–64. We stated in *Nutter* that: "[W]e think that Judge Foster's reasoning and conclusions were essentially sound." *Nutter*, 230 Md. at 14, 185 A.2d at 364. *Nutter* was affirmed and has never been overruled.

The general variance power contained in Article 3 is not specifically limited by the time provisions at issue, and we therefore see no significant difference in the variance power granted to the Board in *Nutter* and the variance power granted to the Board in the case currently before us. Both variance powers, i.e., Anne Arundel County and the City of Baltimore at the time of *Nutter*, apply to the provisions of their respective Articles without any limitation to which provisions these variance powers may apply (except as stated in Article 3).

Another state, in a similar case dealing with time variances, held that:

> "The power of the Board to vary or modify the application of any of the regulations or provisions with respect to construction includes the power to vary provisions relating not only to the manner of construction, but the *time* of construction."

*Scarpati v. Feriola*, 8 A.D.2d 111, 116, 186 N.Y.S.2d 927 (N.Y.App.Div.1959). There, the Court held that the grant of power to modify any provision in the zoning code applied to time extensions because the time requirements were *in* the zoning code. *Id.* at 116–17, 186 N.Y.S.2d 927. While in that case, the variance power specifically applied to "any" of the provisions of the zoning ordinance, there is no limiting language in the Anne Arundel County Code variance provision to indicate that there are any sections in Article 28 to which the variance power does not apply except for those specifically enumerated in Article 3, § 2–107(d), *supra*.

Turning again to the general language of the variance requirements, we find no ambiguity in the provisions. Article 28, § 11–102.2(a) provides that: "[A] variance granted under the provisions of this article *shall* become void . . ." (emphasis

added).  Appellants argue that in choosing the word "shall" the governing legislative body, i.e., the Anne Arundel County Council ("County Council"), evidenced an intent to limit the power to vary this provision.  With regard to the special exception provision, found in Article 28, § 12–107, appellants make the same contention with regard to the phrase "approval of a special exception is rescinded by operation of law...." We disagree with appellants' interpretation.  The use of "shall" and "rescinded by operation of law" imply only that under certain circumstances—not applicable here—a variance is to be voided and a special exception is to be rescinded if there is no further action on the part of any party to extend the time.  Under such a circumstance, no notice of the expiration would be required.  But this automatic voiding and rescission can be avoided by timely invocation of the general variance provision found in Article 3, *supra*, which allows for the variance of any of the provisions of Article 28, which necessarily includes the time limitation provisions.  This is what was done here.[11]

Finally, we take note of the fact that Anne Arundel County has issued more than 130 time extension variances since 1995. We reiterate the language of the *Nutter* Court, when it stated:

"Great difficulty could only result from a hard and fast rule denying the Board power to act as it has and which power the Board has been exercising for many years.  Many cases have shown that Maryland adheres to the doctrine that long established practice and procedures on the part of administrative agencies are not to be disregarded except for the most compelling urgent reasons...."

*Nutter*, 230 Md. at 14, 185 A.2d at 364.  We see no reason to disregard the long-standing practice in this case, wherein the

---

11.  In their brief, appellants have stated several canons of construction that instruct the court to apply specific provisions over general provisions, where the two conflict.  As we have just demonstrated, however, there is no conflict between the general and specific provisions at issue here.  Article 3 authorized a variance of any of the provisions of Article 28.  The time limitations were found in Article 28.  Thus there is no conflict.

Hearing Officer and Board of Appeals, acting within their authority, granted a time variance under the general provisions of the ordinance that was supported with sound reasoning and in compliance with the provisions set forth in the Anne Arundel County Code. Further, as noted by the Board of Appeals, a great deal of work has gone into this project. The New York court in *Scarpati* took specific note of the demonstration of the great difficulties imposed in carrying out the time conditions when it stated:

"Any result other than the one recommended would be harsh, inequitable and unjust.... During that period construction ... was processed to completion at a cost of approximately $750,000. A lending institution has given a mortgage for over $700,000, which the Federal Housing Administration has insured. All of the 61 apartments available for sale in this co-operative apartment house have been sold. Approximately 62% of the members of the co-operative are veterans. The premises are now completely occupied."

*Scarpati*, 8 A.D.2d at 116, 186 N.Y.S.2d 927. We take note of similar efforts by appellee in the instant case, when the Board in their Memorandum Opinion stated:

"We are surprised that the Petitioner was able to accomplish as much as it did because of the uniqueness of the property, the extensive review and approval process, and the legislative issues that the Petitioner had to overcome. The Petitioner has only had approximately four years to work on this project, but yet has jumped through hoops to get this far."

### IV.  Conclusion

A plain-language reading of the statute, in addition to traditional rules of statutory construction, clearly authorized the Board to grant a time variance. Therefore, we hold that the variance power granted to the Board in Article 3, § 2–107 authorized it to issue time variances of the provisions of Article 28, § 11–102.2 and § 12–107.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE
ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID
BY APPELLANTS.